IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAMESH KUMAR WADHWA | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-04-CV-1687-G |
| DOUGLAS DRETKE, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Ramesh Kumar Wadhwa, by and through his counsel of record, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner pled nolo contendere to murder and elected to have a jury assess punishment. After hearing the evidence, the jury found that petitioner acted under the immediate influence of sudden passion arising from an adequate cause, thus reducing the offense from a first degree felony to a second degree felony. Punishment was assessed at 20 years confinement and a $10,000 fine. His conviction and sentence were affirmed on direct appeal. *Wadhwa v. State*, No. 05-01-00452-CR (Tex. App.--Dallas, Feb. 21, 2002, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex Parte Wadhwa*, No. 57,766-01 (Tex. Crim. App. Apr. 28, 2004). Having exhausted his state remedies, petitioner now seeks federal habeas relief.

II.

Petitioner raises three broad issues in 10 grounds for relief. Succinctly stated, petitioner contends that: (1) he received ineffective assistance of counsel; (2) his plea was not knowing or voluntary; and (3) the prosecutor either presented or failed to correct the false testimony of a rebuttal witness.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004). Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal

principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

B.

In multiple grounds for relief, petitioner contends that he received ineffective assistance of counsel at the punishment hearing. Among the criticisms leveled at defense counsel are: (1) failing to call 11 different character witnesses; (2) allowing the prosecutor to portray the sexual relationship between his wife and the victim as consensual; (3) not objecting to remarks about his post-arrest silence; and (4) providing an inaccurate translation of a tape recorded conversation between his wife and the victim.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of

reasonableness. *Id.*, 104 S.Ct. at 2064. The Fifth Circuit has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Herrera*, ___ F.3d ___, 2005 WL 1367821 at *1 (5th Cir. Jun. 10, 2005), *quoting United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003). Second, the petitioner must establish prejudice. *See Strickland*, 104 S.Ct. at 2067. Where ineffective assistance of counsel is alleged during the punishment phase of a non-capital case, the petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney. *Daniel v. Cockrell*, 283 F.3d 697, 706 (5th Cir.), *cert. denied*, 123 S.Ct. 286 (2002), *citing Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Among the relevant factors the court must consider are: (1) the sentence imposed in the case; (2) the minimum and maximum sentence allowed by law; (3) the placement of the sentence within the allowable range; and (4) any mitigating or aggravating factors considered by the trier of fact. *Spriggs*, 993 F.2d at 88-89.[1]

2.

Petitioner was charged with killing, Iqbal Singh, a Sikh priest and spiritual counselor. (*See* St. App. Tr. at 2). Shortly before the murder, petitioner's wife, Sarita, told him that she had been raped by Singh the previous year. (SF-V at 82). At first, petitioner did not believe his wife. However, he changed his mind after listening to a recorded telephone conversation between Singh and Sarita detailing their sexual encounters. (*Id.* at 78-87, 163-64; *see also* SF-IV at 185-98). The next day, Singh invited himself to lunch at petitioner's apartment. (SF-V at 96-97). When Singh

---

[1] In *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines. *Id.* at 438. *See also Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance"). However, the court noted an important distinction between the federal guidelines and state sentencing regimes. Because state sentencing tends to be more discretionary than the more predictable federal system, "practically any error committed by counsel could [result] in a harsher sentence." *Grammas*, 376 F.3d at 438 n.4, *quoting Spriggs*, 993 F.2d at 88. Therefore, the court limited its adoption of the "any amount of jail time" test to cases involving the federal guidelines. *Id.*

arrived, he went into the kitchen with petitioner and began chopping vegetables. (*Id.* at 107-09). The two men prayed together before their meal. During this prayer session, Singh told petitioner that he had "injected or filled all of his love" in Sarita. (*Id.* at 115). Petitioner understood this to mean that Singh had sex with Sarita several times. (*Id.*). After asking for forgiveness, Singh said that he also had filled petitioner's teenage daughter, Radhika, with his love. (*Id.* at 115-18). Petitioner became angry and enraged by these words. (*Id.* at 118). He stabbed Singh multiple times with a kitchen knife, struck him with a pan, and stomped on his head. (*Id.* at 118-21, 131-35, 140-43). Petitioner immediately contacted his attorney who, in turn, called the police. (*Id.* at 121). Singh was pronounced dead at the scene. (SF-III at 8).

3.

Petitioner first contends that defense counsel was ineffective for failing to call numerous witness who were willing to testify to his good character. These witnesses, 11 in number, are relatives and family friends who would have testified that petitioner was a hard worker, a religious and peaceful man, and a loving husband, father, and brother. (*See* St. Hab. Tr. at 43-82). Only one character witness, Anil Kumar, testified at trial. Petitioner now blames his 20-year sentence, the maximum penalty for second-degree murder,[2] on counsel's failure to call additional witnesses.

In order to obtain post-conviction relief on this ground, petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1610 (2001), *quoting Strickland*, 104 S.Ct. at 2065. Strategic choices, made after a thorough investigation of the

---

[2] Under Texas law, premeditated murder is a first-degree felony punishable by imprisonment for not less than five nor more than 99 years or life. *See* TEX. PENAL CODE ANN. §§ 19.02(c) & 12.32 (Vernon 2003). Murder committed under the immediate influence of sudden passion arising from adequate cause is a second-degree felony punishable by imprisonment for not less than two nor more than 20 years. *Id.* §§ 19.02(d) & 12.33.

law and facts relevant to plausible options, are "virtually unchallengeable." *Strickland*, 104 S.Ct. at 2066  "A conscious and informed decision of trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *see also Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *cert. dism'd*, 124 S.Ct. 1652 (2004).  So long as counsel makes an adequate investigation, any strategic decisions as a result of that investigation fall within the wide range of objectively reasonable professional assistance. *See Moore v. Johnson*, 194 F.3d 586, 591-92 (5th Cir. 1999), *cert. denied*, 125 S.Ct. 312 (2004).  Moreover, even if the court believes that testimony from additional character witness might have mitigated petitioner's punishment, relief is not automatic. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed.2d 1 (2003).

Judged against these standards, petitioner cannot show that his attorneys were ineffective for failing to call 11 additional character witnesses. Petitioner was represented at trial by two competent and experienced criminal law practitioners, Stephen A. Tokoly and Don G. Horton.[3]  In sworn affidavits presented to the state habeas court, both attorneys explained that they spent many hours and much effort investigating this case. (Supp. St. Hab. Tr. at 8, 30). Neither Tokoly nor Horton had any recollection of petitioner mentioning any of the witnesses identified in his writ, except for his daughter, Radhika, who petitioner did not want to be involved in the trial. (*Id.* at 11, 34-35). Even had petitioner asked his attorneys to call these witnesses, they likely would have advised against it. As Tokoly explained:

---

[3] Tokoly and Horton are both former Dallas County prosecutors. Tokoly has participated in more than 300 criminal trials, including 50 murder trials, during his 35 years of practice. (Supp. St. Hab. Tr. at 7). Horton also has tried a "large number" of criminal cases. (*Id.* at 29).

> Based on the circumstances of the case and the testimony of the witnesses already called during the trial, I believe that further testimony by character witnesses would have been cumulative of the points already made by the witnesses who testified. Further, we felt that to call additional witnesses would have run the risk of the prosecution going into the graphic details of the killing with each of them, a problem which to that point we believed we had avoided or minimized. At the conclusion of Amil Kumar's testimony, we felt good about our position. We had a discussion with [petitioner] about our position and the risk of calling further witnesses. [Petitioner] agreed with us that, as a matter of trial strategy, we should rest our case without calling another character witness. In my opinion, Mr. Horton and I put forth a convincing case to support our theory of second degree murder and to mitigate our client's punishment without using additional character witnesses.

(*Id.* at 11-12). The state habeas court accepted this explanation and determined that counsel was not ineffective for failing to call additional character witnesses. (*Id.* at 3-4). In so doing, the state court implicitly rejected petitioner's vague and self-serving testimony that he submitted a list of "several, numerous names of possible witnesses who would say good about me." (*See* St. Hab. Tr. at 95, ¶ 12).

An independent review of the state court record supports the strategy articulated by Tokoly and Horton. The last witnesses called to testify for the defense was Amil Kumar, a retired petroleum engineer who has known petitioner since 1981. (SF-V at 193-95). Kumar testified that petitioner was a successful businessman who helped other immigrants, that he was active in his church, that he was a loving and concerned father, that he was a sociable person with a good sense of humor, and that he never appeared out of control at social gatherings. (*Id.* at 195-99). This is essentially the same testimony the 11 other character witnesses would have given if called to testify. (*See* St. Hab. Tr. at 43-82). It appears that defense counsel made the strategic decision to call Kumar at the end of their case-in-chief so the jury would be left with a clear recollection of his testimony during deliberations. Indeed, this strategy paid-off, as the jury convicted petitioner of the lesser charge of

second-degree murder. Although petitioner received the statutory maximum punishment of 20 years confinement, he faced a potential life sentence if convicted of first-degree murder. In light of the gruesome circumstances surrounding the murder as depicted in numerous photographs of the victim and the crime scene, the court cannot say that petitioner's sentence would have been "significantly less harsh" had counsel called additional character witnesses to give the same testimony. Moreover, as noted by defense counsel in their affidavits, each of these witnesses could have been cross-examined by the prosecutor regarding the graphic details of the murder, thus jeopardizing petitioner's "sudden passion" defense. *See Dunagan v. Dretke*, 2004 WL 936875 (N.D. Tex. Apr. 28, 2004) (counsel not required to pursue a trial strategy that risked highlighting unfavorable identification evidence). This ground for relief is without merit and should be overruled.

4.

In two related grounds, petitioner criticizes defense counsel for allowing the prosecutor to portray the sexual relationship between Singh and Sarita as consensual and for not calling witnesses to corroborate the non-consensual nature of their sexual encounters. Petitioner further alleges that this issue should have been raised by his appellate lawyer in a motion for new trial.

The court notes at the outset that defense counsel questioned Sarita at length about her sexual relationship with Singh. When asked if she was physically forced to have sex, Sarita explained, "I mean, I was so shocked in fear, scared of him to say no. I mean, how to throw him off, I just didn't know that." (SF-IV at 168-69). Sarita also testified about a telephone conversation she had with Singh wherein he admitted pressuring her to have sex. (*Id.* at 194). In his closing argument, Tokoly used this testimony to show how petitioner and his wife were betrayed by Singh--their priest, spiritual counselor, and trusted friend. (SF-VI at 38-40). This strategy proved effective, as the jury

found that petitioner acted under the immediate influence of sudden passion arising from an adequate cause.

Nevertheless, petitioner believes that this attorneys should have accused Singh of criminal conduct and called additional witnesses to corroborate Sarita's testimony. Tokoly and Horton responded to these allegations in the state habeas proceeding. Both attorneys explained that they did not attempt to use the criminal statute, Tex. Penal Code § 22.011(b),[4] because Sarita never filed a complaint with the police accusing Singh of sexual assault. (Supp. St. Hab. Tr. at 13, 36). Nor did petitioner or his wife specifically identify any corroborating witnesses. (*Id.*). Even if they were given the names of witnesses who were willing to testify that Sarita was sexually assaulted by Singh, counsel believed that such testimony would have been excluded by the trial court as hearsay and cumulative. (*Id.*). The state court ultimately determined that defense counsel was not ineffective in this regard. (*Id.* at 3-4).

Petitioner has failed to present any evidence, much less clear and convincing evidence, to rebut that finding. The circumstances surrounding Sarita's sexual relationship with Singh were fully developed at trial. Had counsel embellished the facts by accusing the deceased of criminal conduct, the prosecutor likely would have objected to the remark. Even if the objection was overruled, counsel risked alienating the jury by this tactic. That is precisely why Tokoly and Horton did not object when the prosecutor referred to the relationship between Singh and Sarita as a consensual "extra-marital affair." (*Id.* at 12, 35). Nor is there any reason to believe that the jury would have been persuaded to give petitioner a lesser sentence had defense counsel accused Singh of sexual

---

[4] This statute provides, in pertinent part, that a sexual assault is without the consent of the other person if "the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as a spiritual advisor." TEX. PENAL CODE ANN. § 22.011(b)(10) (Vernon 2003).

assault. With respect to counsel's failure to call corroborating witnesses, petitioner still has not identified any witness who could have testified, from his or her own personal knowledge, that Sarita was sexually assaulted by Singh. This court agrees with defense counsel and the state habeas court that such testimony likely would have been excluded as hearsay and cumulative of other evidence. Petitioner is not entitled to relief on these grounds.

5.

Next, petitioner contends that counsel was ineffective for failing to object to statements about his post-arrest silence. At issue are questions asked by the prosecutor implying that petitioner fabricated the sexual encounter between his daughter and Singh. On direct examination, petitioner testified that he became "angry" and "enraged" when Singh said that he "filled [his] love" in Radhika. (SF-V at 117-18). The prosecutor characterized this testimony as a "revelation" because petitioner never mentioned the molestation of his daughter to anyone prior to trial. (*See id.* at 139-40; SF-VI at 9-10). This point was emphasized by the prosecutor during her closing argument. In asking the jury to convict petitioner of first-degree murder, the prosecutor stated:

> Please use your common sense when you go back there, based on the credible evidence and as you determine it, find him guilty of first-degree murder and assess the proper punishment for a first-degree murder. Because, ladies and gentlemen, if you believe him, if you believe him and what he told you, you're telling the community, you're sending the word out, you're giving everybody license to kill and then one year later come in and tell a jury "I did it and I cried molestation."

(SF-VI at 34). A more pointed reference to petitioner's post-arrest silence was made by the prosecutor in her rebuttal argument, when she reminded the jury that "[n]ever, ever does [petitioner] inform the Coppell Police Department that this man he has just murdered sexually abused his daughter." (*Id.* at 62).

As a general rule, a defendant may not be impeached with evidence of post-arrest silence. *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Such evidence violates the due process clause of the Fourteenth Amendment "if the manifest intent was to comment on the defendant's silence, or if the character of the remark was such that the jury would naturally and necessarily so construe the remark." *United States v. Rodriguez*, 43 F.3d 117, 121 (5th Cir.), *cert. denied*, 115 S.Ct. 2260 (1995). The court is not convinced that the vague references to petitioner's "revelation" about the molestation of his daughter constitute *Doyle* error. The prosecutor's remark that petitioner never reported this incident to the police, standing alone, does not manifest an intent to comment on post-arrest silence. But even if counsel had a valid objection, they had sound strategic reasons for not making it. As Tokoly and Horton explained in their affidavits:

> We were seeking the jury's understanding and sympathy for [petitioner] in order to mitigate his punishment in the face of facts reflecting a bloody killing of an unarmed victim who sustained multiple stab and incised wounds and blunt force injuries. In order to accomplish our goal, counsel and [petitioner] agreed that it would be necessary for him to testify and explain his motivation for and the circumstances leading up to the killing. Consequently, it was our view that to object to the prosecutor's references to [petitioner's] post-arrest silence could antagonize the jury and appear to contradict our clear trial strategy.

(Supp. St. Hab. Tr. at 14, 37). This strategy worked. By convicting petitioner of second-degree murder, the jury apparently believed that he stabbed Singh after learning that his daughter had been sexually molested. Moreover, even if counsel was ineffective for failing to make a *Doyle* objection, petitioner cannot demonstrate prejudice. *See United States v. Chavez*, 193 F.3d 375, 380 (5th Cir. 1999) (defendant not prejudiced by *Doyle* error where verdict indicated that jury did not give credence to remarks about post-arrest silence). This ground for relief should be overruled.

6.

Petitioner also claims that the expert hired by his attorneys to translate the tape recorded conversation between Singh and Sarita "materially altered" the meaning of the conversation. The record shows that counsel retained Gaughkar Singh Bains, a qualified Punjabi interpreter, to translate the tape. All parties, including petitioner, agreed to the interpreter. Although defense counsel provided Bains with a copy of the audio tape well in advance of trial, the translation took longer than expected. Counsel did not receive the transcript until the day Bains was called to testify. At trial, Bains read the entire transcript of the tape recorded conversation between Singh and Sarita into evidence. Petitioner was present when the English version of the transcript was read in open court and had every opportunity to voice concerns about the accuracy of the translation. He failed to do so. Even after the trial, petitioner did not point out any inaccuracies in the translation of the audio tape. It was not until two years later, when petitioner filed his state writ, that he first identified inaccuracies that allegedly were detrimental to his defense. (*See* Supp. St. Hab. Tr. at 14-15, 37-38).

The gravamen of petitioner's claim is that the translation read into evidence at trial did not convey the true meaning of the conversation between Singh and Sarita in the context of their cultural background.[5] Had a proper translation been provided, petitioner believes it would have shown that his wife was the victim of a forced sexual relationship. The court already has determined that petitioner was not prejudiced by the manner in which defense counsel portrayed the relationship between Singh and Sarita. The jury heard ample evidence of how Sarita was manipulated by Singh and submitted to the sexual advances of her spiritual counselor. No doubt this evidence helped

---

[5] Petitioner maintains that the true meaning of several words and phrases were substantially altered by the interpreter when translated from Punjabi to English. By way of example, petitioner suggests that: (1) the phrase translated as "physical contact" actually means "molest;" (2) the word translated as "accident" actually means "molestation;" (3) the phrase translated as "physically held" actually means "molested;" (4) the phrase translated as "That I held you physically" actually means "Yes, I have put my hands on you;" and (5) the question translated as "Why did you hold me?" actually means "Why did you do it?" (*See* Pet. Am. Hab. Pet. at 40).

persuade the jury to convict petitioner of second-degree murder instead of first-degree murder. Although petitioner received a 20-year sentence for killing Singh, there is no reason to believe the sentence would have been "significantly less harsh" had the audio tape been translated differently.

C.

Petitioner further argues that his nolo contendere plea was not knowing or voluntary. According to petitioner, his plea was based on the mistaken belief that he could appeal certain pretrial rulings and that defense counsel would attempt to mitigate his conduct by focusing on the non-consensual sexual relationship between Singh and Sarita. In a related argument, petitioner claims that the trial judge failed to properly admonish him in accordance with Tex. Code Crim. Proc. art. 26.13.

1.

A trial judge is required to ensure that a guilty plea is knowing and voluntary. *See James v. Cain,* 56 F.3d 662, 666 (5th Cir. 1995). The defendant must have "a full understanding of what the plea connotes and of its consequences." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1678 (1992), *quoting Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). This constitutional inquiry focuses on three core concerns: (1) the absence of coercion; (2) an understanding of the charges; and (3) a realistic understanding of the consequences of the guilty plea. *United States v. Bernal,* 861 F.2d 434, 436 (5th Cir. 1988), *cert. denied*, 110 S.Ct. 203 (1989). These core concerns are addressed by the admonishments contained in Tex. Code Crim. Proc. art. 26.13.[6]

---

[6] The Fifth Circuit has held that the admonishments under Fed. R. Crim. P. 11 provide "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). The requirements of Rule 11 and article 26.13 are substantially similar. *Compare* FED. R. CRIM. P. 11 *and* TEX. CODE CRIM. PROC. ANN. art 26.13 (Vernon 1989). It therefore follows that the same "prophylactic protections" attach to the admonishments under article 26.13. *See Jamme v. Cockrell*, 2002 WL 1878403 at *5 n.4 (N.D. Tex. Aug. 12, 2002).

2.

Petitioner never denied killing Singh. In light of the overwhelming evidence against him, petitioner elected to enter a plea of nolo contendere, or "no contest," and focus his defense on convincing the jury that he acted under the immediate influence of sudden passion arising from adequate cause. Tokoly and Horton recall discussing this strategy with petitioner, including the range of punishment for first-degree murder and second-degree murder, the burden of proof for each offense, and parole considerations. (*See* Supp. St. Hab. Tr. at 16, 39). During voir dire, the trial judge explained the differences between premeditated murder and murder where the defendant acts under the immediate influence of sudden passion. (*See* SF-I at 8-12). The next day, petitioner entered a plea of nolo contendere in open court. (SF-III at 3).

On direct appeal, the court of appeals held that petitioner's presence during voir dire when the effect of his plea and the range of punishment were explained to the jury panel supported a finding that his plea was voluntary. *Wadhwa*, No. 05-01-00452-CR, op. at 1-2. The state habeas court also found that petitioner's plea was knowingly and voluntarily entered and that he was properly admonished in accordance with the requirements of article 26.13. (*See* Supp. St. Hab. Tr. at 4-5). In an attempt to rebut these findings, petitioner maintains he was never told that his plea prevented him from appealing the denial of a motion to suppress.[7] However, under Texas law, petitioner retained the right to appeal rulings on written pretrial motions. *See Young v. State*, 8 S.W.3d 656, 667 (Tex. Crim. App. 2000) (valid plea of guilty or nolo contendere waives right to appeal claim of error only when judgment of guilt was rendered independent of, and not supported

---

[7] Defense counsel filed a pretrial motion to suppress items seized from petitioner's apartment. (St. App. Tr. at 40). Following an evidentiary hearing, the trial court granted the motion in part, suppressing evidence seized from a personal computer and a zip drive. In all other respects, the motion was denied. (Pretrial SF-IV at 4).

by, such error). Although appellate counsel elected not to appeal the denial of petitioner's motion to suppress, he was not precluded from doing do.

Petitioner also claims that he pled nolo contendere in the belief that counsel would portray the sexual relationship between Sarita and Singh as "not consensual." As previously discussed, defense counsel questioned Sarita at length about the circumstances surrounding her sexual relationship with Singh. Counsel used this testimony to show that petitioner and his wife were betrayed by their priest and trusted friend. (SF-VI at 38-40). As a result of this strategy, the jury convicted petitioner of second-degree murder instead of first-degree murder. While petitioner may have preferred that his attorneys accuse Singh of criminal conduct, the state habeas court impliedly found that no such strategy was ever intended by defense counsel. (*See* Supp. St. Hab. Tr. at 3-4, 17, 40). Petitioner has failed to rebut that finding or any other finding upholding the validity of his plea, by clear and convincing evidence. Consequently, these grounds for relief should be overruled.

### D.

Finally, petitioner accuses the prosecutor of either presenting or failing to correct the false testimony of Kirpal Singh Bhogal. He also claims that counsel was ineffective for failing to investigate Bhogal and prepare for his testimony.

### 1.

The due process clause prohibits the use of perjured testimony to obtain a conviction. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Black v. Collins*, 962 F.2d 394, 407 (5th Cir.), *cert. denied*, 112 S.Ct. 2983 (1992). In order to establish a due process violation based on the use of perjured testimony, a habeas petitioner must prove that: (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material. *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir.), *cert. denied*, 115 S.Ct. 671 (1994). Evidence is

"material" only if there is a reasonable probability that it affected the outcome of the trial. *See United States v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1525 (1998) (citing cases).

2.

Bhogal was called as a rebuttal witness by the state. On direct examination, Bhogal testified that he first met Singh at a Sikh Temple in Irving, Texas approximately two years before the murder. (SF-VI at 17). Singh subsequently became the priest at Gurdwara Sikh Sangat, a Sikh congregation in Euless, Texas where Bhogal serves on the Board of Directors. (*Id.* at 16-18). When asked by the prosecutor if Singh had ever been accused of acting improperly toward children, Bhogal replied, "There was never, ever any kind of allegation. He was very kind and very nice and very good with children, and children loved him." (*Id.* at 19). Bhogal further testified that members of his congregation would not have allowed Singh to serve as their priest if they believed he was sexually abusing children. (*Id.* at 20).

Petitioner now contends that much of Bhogal's testimony was false. In support of this claim, petitioner points to an affidavit signed by Bhogal in January 2004--nearly three years after he testified at petitioner's criminal trial.[8] According to this affidavit, Singh was a music teacher, not a member of the clergy. (Pet. Hab. Pet., Exh. 18 at 2). Bhogal further stated that he had only known Singh for 11 days prior to his death. (*Id.*). Petitioner argues that these inconsistent statements prove that Bhogal perjured himself at trial. However, even if Bhogal testified falsely, petitioner is not entitled to habeas relief unless the prosecutor knew the testimony was false. *See Blackmon*, 22 F.3d at 565. Here, the prosecutor had no reason to question Bhogal's testimony. At a pretrial interview,

---

[8] The affidavit was submitted by Bhogal in a civil lawsuit brought by petitioner and his family against Gurdwara Sikh Sangat and affiliated organizations.

Bhogal and other members of his temple repeatedly referred to Singh as a "priest." (Sec. Supp. Hab. Tr. at 7-8). In addition, Bhogal co-signed an apartment lease for Singh in April 1999--nine months before the murder. (*Id.*). This strongly suggests that Bhogal knew Singh for more than 11 days as stated in his affidavit. (*See* Sec. Supp. St. Hab. Tr. at 7-8).

By denying post-conviction relief, the state habeas court impliedly found that the prosecutor did not know Bhogal's testimony was false. Petitioner has failed to rebut that finding by clear and convincing evidence. Nor is there any reason to believe that a more thorough investigation by defense counsel would have uncovered any discrepancies between Bhogal's testimony and the true facts--discrepancies which did not come to light until Bhogal signed an affidavit nearly three years after the conclusion of the criminal trial. These grounds for relief are without merit and should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 27, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE